IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FULL HOUSE PRODUCTIONS, INC., <br><br> Plaintiff, <br> v. <br><br> SHOWCASE PRODUCTIONS, INC., an Illinois Corporation, SANDRA L. ITALIA, individually, JOHN ITALIA, JR., individually, DANIEL 'CHESTER' SURVILLAS, individually, and BRENT WOODS, individually, <br><br> Defendants. <br><br> JOHN ITALIA, JR., <br><br> Cross-Plaintiff, <br> v. <br><br> SANDRA L. ITALIA, individually, <br><br> Cross-Defendant. | Case No. 05 C 4602 <br><br> Judge Charles P. Kocoras <br><br> Magistrate Judge Ian H. Levin |

## MOTION TO QUASH SUBPOENAS

Defendant, **SHOWCASE PRODUCTIONS, INC.** ("Showcase"), by and through its attorneys, moves this Court pursuant to Fed. R. Civ. Proc. No. 45(c)(3) to quash subpoenas issued by Plaintiff **FULL HOUSE PRODUCTIONS, INC.** ("Full House") to various valued business partners of Showcase or alternatively subject any resulting production to the protective order entered in this case, and, in support thereof, states as follows:

1. Plaintiff is attempting to circumvent the protective order in this case by serving six (6) subpoenas (duces tecum) on venues that host defendant Showcase's home shows (the "Venues"). Plaintiff's subpoenas specify a return date of July 6, 2006. The subpoenas demand irrelevant information relating their private business dealings with Showcase and serve only to

1

harass and dissuade the Venues from hosting Showcase's home shows. Accordingly, the Court should quash or modify Full House's subpoenas as requested below.

## BACKGROUND

*Full House's Complaint*

2.   Plaintiff and Showcase both organize and produce competing home show events at a variety of exhibition centers throughout the Chicago area. Plaintiff's state law claim alleges, among other things, that in 2002, a former employee misappropriated "proprietary business information and trade secrets" and transferred them to Showcase. Compl., ¶¶ 23-32.

3.   Ever since, Full House has retaliated by making it a practice to interfere with Showcase's business and harass any entity that elects to do business with it. See Group Exhibit 1, which contains examples of defamatory and misleading faxes that Full House regularly transmits to potential exhibitors in an effort to disrupt the "other guys" home shows.

4.   In a similar vein, Full House filed this suit under the Trademark Act, 15 U.S.C. § 1125 *et seq.* even though it had no valid trademark in the words "The Home Show." See Exhibit 2 (Section 5, March 17, 2006 U.S. Patent and Trademark Office Office Action admonishing Full House to "disclaim all wording in the mark, namely, 'THE HOME SHOW' apart from the mark because it merely describes a characteristic of applicant's services, namely, that the kind of shows produced by applicant are home shows.").

5.   The Court entered into a protective order in this case, which included "eyes only" protection for sensitive documents. Exhibit 3.

6.   On or about May 16, 2006, Plaintiff served subpoenas on the six Venues seeking all information and documents from 1998 to the present regarding the private communications, business dealings, correspondence, agreements, discussions, negotiations, etc. between the

2

Venues and defendants. The Venues are: (a) Libertyville Sports Complex ("LSC"); (b) The Prairie Stone Sports & Wellness Center ("PSSWC"); (c) Lincolnshire Marriott ("LM"); (d) Homer Glen Megaplex ("HGM"); (e) St. Charles Sportsplex ("SCS"); and (f) William R. Harper College ("Harper"). See Group Exhibit 4 (which includes a copy of one of the subpoenas in its entirety, plus copies of the first two page of the remaining subpoenas (the remaining pages of each subpoena are substantially similar)).

7. Showcase considers these entities as essential business partners (all of the venues but HGM have hosted shows and Showcase has had negotiations with it). Yet, with one exception, Full House has either (i) *never* produced a home show at the Venues or (ii) produced a show only several *years* after the purported misappropriation. For example:

 a. Full House has *never* held a home show at PSSWC. Showcase only started producing shows at PSSWC last year, three years after the alleged tort.

 b. Full House has *never* held a home show at LSC. Showcase did not produce a show at LSC until Fall 2003.

 c. Full House has *never* produced a show at SCS. Showcase did not produce a home show at SCS until Spring 2003.

 d. Full House did not hold a show at LM until February *2006*. Showcase did not start producing shows at LM until Spring 2003.

 e. Full House's first show at HGM did not occur until Spring 2005.

8. Full House cannot assert an injury relating to the three venues it never used (LSC, PSSWC and SCS) nor the two it did not use until several years after the alleged misappropriation (HGM and LM). These five Venues have no relevance to an alleged misappropriation in 2002.

3

9. Showcase did not receive notice of the subpoenas until May 23, 2006. Apprehending that Full House was using this Court's subpoena power to circumvent the Protective Order and to harass and intimidate Showcase's valued business partners, on May 25, 2006, Showcase notified the Venues that it intended to object if Full House would not withdraw the subpoenas. On June 2, 2006, pursuant to Rule 26 of the Federal Rules of Civil Procedure, Showcase wrote Full House stating its objections to the subpoenas and urging it to withdraw them. See Exhibit 5.

10. Full House responded on June 9, 2006, stating that it would not withdraw its subpoenas and that it welcomed judicial intervention. See Exhibit 6.

11. Federal Rule of Civil Procedure 45 provides that "upon a timely motion," a court may quash a subpoena if it, among other things, "(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or (iv) subjects a person to undue burden." Fed. R. Civ. Proc. 45(c)(3)(A). A court may also quash a subpoena if it "requires disclosure of a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. Proc. 45(c)(3)(B)(i).

12. The subpoenas attempt to invade Showcase's "privileged or other protected matter," namely, proprietary information regarding its business dealings and interactions with the Venues (including ongoing negotiations, pricing and plans, etc.). This is the same category of information that Full House asserts is a "trade secret." See *Nat'l Claims Mgt. Corp. v. Mercedes-Benz of North America*, 1998 U.S. Dist. LEXIS 492 at *3 (N.D. Ill. 1998) (quashing subpoena where requested information was irrelevant and because "[a]llowing [defendant's] subpoena to stand would cause [the third party's] confidential business practices and techniques, as well as other sensitive information, to be revealed to [plaintiff], a principal competitor.").

13. Showcase also has a protectable interest in its business relations with the Venues. The subpoenas "poison the waters" with Showcase's valued business partners. The prospect of being dragged into litigation that is irrelevant to them threatens their continued willingness to enter into contracts with Showcase. The subpoenas represent a pattern of harassment towards Showcase's business partners that exceeds the bounds of permissible discovery. *Builders Ass'n of Greater Chicago v. City of Chicago*, 215 F.R.D. 550, 554 (N.D. Ill. 2003) ("A subpoena is obviously unduly burdensome if the information is wholly irrelevant under any reasonable legal theory; *if the subpoena was issued for the purpose of harassment* or if the party issuing the subpoena did not, in good faith, believe, after reasonable inquiry, that the subpoena was not unreasonable or unduly burdensome or expensive for the reasons indicated.") (emphasis supplied).

14. Finally, Full House's subpoenas are irrelevant. The subpoenas go back to 1998, four years before the claim allegedly arose. Moreover, Full House has *never produced a home show* at three of the Venues and has *only recently* produced a show at two other Venues; accordingly, these entities cannot have relevant information relating to purported misappropriation of trade secrets in 2002. See *Chaikin v. Fidelity and Guaranty Life Ins. Co.*, 2003 U.S. Dist. LEXIS 20630 at *3-4 (N.D. Ill. 2003) (court quashed the majority of defendant's third party subpoena requests regarding plaintiff's communications with its bank, finding them overly broad and irrelevant); *LG Electronics, Inc. v. Q-Lity Computer, Inc.*, 211 F.R.D. 360, 372-73 (N.D. Cal. 2002) (quashing subpoenas where subject matter of subpoenas had "no relevance to the products that are a part of this litigation.").

15. Showcase has standing to bring this Motion as the third party subpoenas seek confidential documents and information regarding Showcase's business dealings. See *Chaikin*,

2003 U.S. Dist. LEXIS 20630 at *2 (plaintiff has standing to quash third party subpoenas to plaintiff's bank that sought confidential information relating to, among other things, plaintiff's annuities and communications between the bank and plaintiff).

16. The parties, after a good faith attempt to work out the issues contained herein, could not reach an accord.

## CONCLUSION

For the foregoing reasons, Defendant, Showcase Productions, Inc., respectfully requests that this Court grant its Motion to Quash the subpoenas served by Defendant Full House Productions, Inc., as described above, or, in the alternative, limit them and subject any resulting productions to the Protective Order entered in this case, and to grant such other relief as this Court deems reasonable and appropriate.

Date: June __, 2006                    Respectfully submitted,

                                       **SHOWCASE PRODUCTION, INC.**
                                       Defendant

                                       By: _____
                                           One of its Attorneys

Damon E. Dunn (#06180629)
Daniel T. Graham (#06203811)
Eric D. Bolander (#06277154)
FUNKHOUSER VEGOSEN LIEBMAN & DUNN LTD
55 West Monroe Street, Suite 2300
Chicago, Illinois 60603
Telephone: (312) 701-6800
Facsimile: (312) 701-6801