UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FULL HOUSE PRODUCTIONS, INC., | ) |
| Plaintiff, | ) |
| vs. | ) 05 C 4602 |
| SHOWCASE PRODUCTIONS, INC., an Illinois corporation; SANDRA L. ITALIA, individually; JOHN ITALIA, JR., individually; DANIEL 'CHESTER' SURVILLAS, individually, and BRENT WOODS, individually, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

The following matter is before the court on Defendant's, Showcase Productions, Inc. ("Showcase"), Sandra L. Italia, John Italia, Jr., Daniel Chester Survillas and Brent Woods (collectively referred to as "Defendants"), Motion to Quash Subpoenas pursuant to Fed. R. Civ. P. 45. For the foregoing reasons, Defendants' Motion is denied.

## BACKGROUND

Both Showcase and Plaintiff, Full House Productions, Inc. ("Full House"), are Illinois corporations in the business of producing and organizing home improvement

shows in the Chicago metropolitan area. Defendant John Italia is the President and sole shareholder of Showcase. Mr. Italia is an individual residing in Illinois and a participant in the affairs, operations and activities of Showcase. Defendant Woods is an individual residing in Illinois previously employed by Full House, and was hired by Showcase to aid in the creation of its website. Defendant Survillas is an individual residing in Illinois and was previously employed by Full House, who is currently employed by Showcase to aid in the creation of its website, sales to exhibitors, soliciting vendors, and helps in the Showcase shows. The following facts are taken from the pleadings submitted by the parties and considered to be true for the purposes of this Motion only.

Full House alleges that a former employee, Scott Hardesty ("Hardesty"), misappropriated and transferred confidential information to Showcase. Hardesty was employed by a predecessor to Full House. On or about January 27, 1994, Full House acquired the predecessor company and continued to employ Hardesty. Over the course of the ensuing years, Hardesty became a key employee of Full House operations, attaining the title and corresponding responsibilities of Show Manager. Hardesty is alleged to have had access to Full House's confidential information. Hardesty resigned his employment from Full House on April 9, 2002.

Full House alleges that commencing in or about early January 2002, Sandra Italia and John Italia engaged in a scheme to establish an enterprise in direct competition with Full House through the use of unfair trade practices and the theft of Full House's computer files, proprietary information and trade secrets. In essence, Full house alleges that the Italias solicited Hardesty, by way of a job offer with Showcase, to misappropriate the confidential information he had access to at Full House.

In furtherance of the alleged plot, Full House claims that the Italias, as well as Survillas and Woods, designed a Web page substantially similar in name and content to Full House and intended to divert Web traffic away from Full House's website and to Showcase's. Full House's Web domain name is registered as "TheHomeShows.net", whereas Showcase's Web domain name is "TheHomeShow.net."

On August 11, 2005, Full House filed a ten count complaint alleging: violations of the Federal Trademark Act of 1946, the Illinois Trade Secrets Act, the Illinois Uniform Deceptive Trade Practices Act, the Illinois Uniform Deceptive Trade Practices Act, and the Consumer Fraud and Deceptive Business Practices Act; as well as claims of tortious interference with prospective advantage, common law unfair competition, unjust enrichment and conversion.

On or about May 16, 2006, Full House served subpoenas on six home show venues with whom Showcase does business, seeking all information and documents from 1998 to the present date regarding business dealings, correspondence, agreements, discussions, negotiations, and other private communications between the Venues and the Defendants. The Venues are: 1) Libertyville Sports Complex; 2) The Prairie Stone Sports & Wellness Center; 3) Lincolnshire Marriott; 4) Homer Glen Megaplex; 5) St. Charles Sportsplex; and 6) William R. Harper College (collectively referred to as the "Venues"). Full House has not produced a home show with five of the six Venues with the exception of the Homer Glen Megaplex; however, that show did not occur until Spring of 2005.

On May 26, 2006, we issued a protective order covering the parties confidential trade information, including financial data and facility specific information. Subsequently, on June 15, 2006, the Defendants filed a Motion to Quash the Subpoenas and noticed the Motion for hearing. On June 21, we granted the Motion without prejudice. Thereafter, on June 29,. 2006, Full House sought leave to file a response to Showcase's Motion to Quash and to vacate our June 21 Order. On July 6, 2006, we granted Full House's request to file response to the Motion to Quash and ordered it to be filed by July 13, 2006. Full House filed its Response untimely on July 14, 2006.

## DISCUSSION

A district court must quash or modify a subpoena if it "requires disclosure of privileged or otherwise protected matter and no exception or waiver applies." Fed. R. Civ. P. 45(c)(3)(A)(iii); Abbott v. Kidder, Peabody & Co., 1997 WL 337228, 2 (N.D.Ill. 1997). A court may also quash a subpoena if it "requires disclosure of a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. Proc. 45(c)(3)(B)(I). Defendants contend that the subpoenas, if issued, would: 1) circumvent the protective order issued by this court allowing Full House to have access to privileged information; 2) "poison the waters" between Showcase and its "valued business partners"; and 3) seek irrelevant information. We address each of Defendants' arguments in turn.

First, Defendants argue that Full House is attempting to circumvent the issued protective order with the subpoenas because the information requested is privileged. As Defendants note, the basis of the protective order was to prevent the disclosure of Showcase's financial information or otherwise limit disclosure of sensitive and/or confidential information outside the purview of the public. However, the protective order was not intended to keep information relevant to the instant action from Plaintiff's efforts to bring its case. Defendants fail to show that the requested information is privileged. Therefore, without such a showing, the requested

information does not constitute privileged information warranting the quashing of the subpoenas.

Second, Defendants assert that the issued subpoenas are unduly burdensome because they "poison the waters" of the business relationships between Showcase and the Venues. "A subpoena is obviously unduly burdensome if the information is wholly irrelevant under any reasonable legal theory; if the subpoena was issued for the purpose of harassment or if the party issuing the subpoena did not, in good faith, believe, after reasonable inquiry, that the subpoena was not unreasonable or unduly burdensome or expensive for the reasons indicated." Builders Ass'n of Greater Chicago v. City of Chicago, 215 F.R.D. 550, 554 (N.D.Ill. 2003). Defendants submit that subpoenas have a spoiling effect on the business relationships between a litigant and subpoenaed third party with whom the litigant has a business relationship. Although a subpoena may have such an effect in some cases, that result alone cannot preclude otherwise proper subpoenas. Further, although Defendants argue that the subpoenas were issued with a harassing motive, they fail to show that the subpoenas do not have a legitimate intention. Plaintiff contends that the alleged misappropriated information led to the relationships Showcase now has with the Vendors. Consequently, it is evident that the requested information is relevant to that assertion and is therefore not unduly burdensome.

Finally, Defendants submit that because Showcase was not incorporated until 2002 and Full House did not have dealings with 5 of the 6 subpoenaed Venues, that the subpoenas ask for irrelevant information. Fed. R. Evid. 401 states that "relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action fore probable or less probable than it would be without the evidence." Plaintiffs submit that the allegedly misappropriated information led to the business relationships between the Venues and Showcase and wish to discover the exact time where Defendants supposedly misappropriated the confidential information. Although Defendants are correct that Showcase, itself, could not have had business correspondence with the Venues, that is not to say that none of the Defendants had such correspondence which ultimately led to the current relationship Showcase has with the Venues.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Quash Subpoenas pursuant to Fed. R. Civ. P. 45 is denied.

_____
Charles P. Kocoras
United States District Judge

Dated: ___August 15, 2006___